Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Andrew P. Lee (SBN 245903)
alee@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510) 763-9800; (510) 835-1417 (Fax)

Oren Sellstrom (SBN 161074)
osellstrom@lccr.com
Meredith Desautels Taft (SBN 259725)
mdesautels@lccr.com
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
    OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
(415) 543-9444; (415) 543-0296 (Fax)

Attorneys for Plaintiffs and the putative class

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD GILLETTE, individually, and on behalf of all others similarly-situated,<br><br>    Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC., a California corporation; and DOES 1-20, inclusive<br><br>    Defendants. | Case No.: 3:14-cv-5241<br>CLASS AND REPRESENTATIVE ACTION<br>**COMPLAINT**<br>**1. Failure to Provide Notice of Obtaining Consumer Report in Violation of 15 U.S.C. § 1681b(b)(2)(A)(i);**<br>**2. Failure to Obtain Authorization for Consumer Report in Violation of 15 U.S.C. § 1681b(b)(2)(A)(ii);**<br>**3. Failure to Provide Consumer Report Prior to Taking Adverse Action in Violation of 15 U.S.C. § 1681b(b)(3)(A)(i);**<br>**4. Failure to Provide a Summary of Rights Prior to Taking Adverse Action in Violation of 15 U.S.C. § 1681b(b)(3)(A)(ii)**<br>**5. Failure to Provide Notice of Obtaining Consumer Report in Violation of California Civil Code § 1786.16(a)(2)(B)**<br>**6. Failure to Obtain Authorization for Consumer Report in Violation of California Civil Code § 1786.16(a)(2)(C)**<br>**7. Failure to Provide Opportunity to Request and Receive Copy of Consumer Report in Violation of California Civil Code § 1786.16(b)**<br>**8. Violation of the Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq*.**<br>**Demand for Jury Trial** |

Plaintiff RONALD GILLETTE ("Plaintiff"), on behalf of himself and other similarly-situated individuals, alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action pursuant to the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. on a class basis, the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 *et seq*. on a representative basis, and the California Investigative Consumer Reporting Agencies Act ("ICRAA"), California Civil Code § 1786 *et seq*. on an individual basis.

2. The FCRA and ICRAA impose on entities that use consumer background reports important procedural safeguards designed to protect consumers like Plaintiff Gillette. Plaintiff began working for Uber Technologies, Inc. ("Defendant" or "UBER") as a driver in approximately February 2013. In April 2014, Uber abruptly closed Mr. Gillette's account and terminated his employment as a result of a consumer background report. Uber, however, failed to notify Mr. Gillette or obtain his authorization prior to procuring his consumer background report. Moreover, Uber failed to provide Plaintiff Gillette with a copy of his consumer background report and a description of his rights under the FCRA. These actions amount to willful violations of the FCRA.

3. Plaintiff also brings this action pursuant the California Private Attorneys General Act of 2004 ("PAGA"). The California Labor Code requires employers to provide to its employees, among others things, itemized wage statements, meal and rest periods, minimum and overtime wages, reimbursement of necessary expenses, full and complete gratuities, and prompt payment of wages upon termination. Uber failed to comply with California Labor Code requirements due to the erroneous classification of its drivers as independent contractors. Plaintiff Gillette seeks civil penalties on behalf of himself and other aggrieved employees pursuant to PAGA on a representative basis.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's and putative class members' FCRA claims pursuant to 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiff's PAGA claims pursuant 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant resides in this judicial district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

7. Plaintiff Ronald Gillette is a resident of the City and County of San Francisco, California and a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and California Civil Code § 1786.2(b). Plaintiff Gillette is a former employee of Uber who worked as a driver from approximately February 2013 to April 2014. The acts complained of herein occurred within the two years preceding the filing of this Complaint and continue to the present.

8. Defendant Uber Technologies, Inc. is a California corporation headquartered in San Francisco, California. Uber is a "person" within the meaning of 15 U.S.C. § 1681a(b) and California Civil Code § 1786.2(a).

9. The true names and capacities of DOES 1-20, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff. Plaintiff will amend this complaint to show the true names, capacities, and involvement of DOES 1-20, inclusive, once they are ascertained. Plaintiff is informed, believes, and thereon alleges that each of the defendants designated as a DOE is responsible in some manner for the events, happenings, and omissions described herein, and that Plaintiff's injuries and damages were proximately caused by said defendants. Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, each of the DOES 1-20, inclusive, was an agent, employee, successor, predecessor, parent, and/or subsidiary of each of the remaining defendants, and each of them was at all times acting within the purpose and scope of the applicable relationship.

## PLAINTIFF GILLETTE'S FACTUAL ALLEGATIONS

10. Founded in 2009, Uber provides on demand automobile transportation in over 200 cities across 45 different countries. It allows its customers to request and pay for car services via a mobile phone application. Uber advertises itself as "your private driver in more than 40 countries. Request a ride using the app and get picked up within minutes. On-demand means no reservations."

11. In February 2013, Plaintiff was hired by Abbey Lane Limousine ("Abbey"), which provides limousine and car services within the San Francisco Bay Area. Shortly after starting with

Abbey, Plaintiff applied to become a driver for Uber. Following the submission of an application through Uber's website, Plaintiff met with an Uber representative at one of Uber's San Francisco office locations. There he passed a short test given on a tablet device, and had his picture taken. Plaintiff began driving for Uber immediately thereafter. At no time during the application process did Uber request Plaintiff's authorization to obtain a consumer background report, nor did it notify Plaintiff that it would obtain a consumer background report.

12. From approximately March 2013 to April 2014, Plaintiff successfully drove for Uber. Using an SUV provided by Abbey, Plaintiff provided "SUV" car services in the San Francisco metropolitan area. Plaintiff worked between 36-48 hours per week. On average he picked up and dropped off between 4 to 7 customers per day. Although Plaintiff continued to work for Abbey, he spent approximately 90% of his time working for Uber. Throughout his employment with Uber, Plaintiff maintained a rating of between 4.7 and 4.8 out of 5 stars.

13. Uber paid Abbey once per week for Plaintiff Gillette's services. The gross money generated by Plaintiff was split as follows: 20% to Uber, 40% to Abbey, and 40% to Plaintiff.

14. Uber classified Plaintiff as an independent contractor rather than as an employee. As a result, Uber failed to provide Plaintiff with itemized wage statements, minimum and overtime wages, lawful meal or rest periods, and reimbursement for necessary expenses. Uber also failed to keep accurate payroll records showing Plaintiff's hours worked and wages paid. Moreover, Uber retained all gratuities despite representing to its customers and to Plaintiff Gillette that gratuity is included in the total cost of the car service. Gratuities of 15-20% are customary in the car service industry.

15. In April 2014, Plaintiff's Uber account was abruptly deactivated. Both Plaintiff and Abbey immediately contacted Uber to determine the reason for the deactivation. In response, Uber requested that Plaintiff meet with a representative at Uber's Mission Street office location. The meeting between Plaintiff and Uber lasted only a few minutes. Upon Plaintiff's arrival, a male representative who failed to identify himself greeted Plaintiff in the building lobby. The representative informed Plaintiff that "something had come up" on his consumer background report and that he could no longer work for Uber. Prior to his termination, Uber failed to provide Plaintiff with a copy of his consumer background report or a summary of his rights under the FCRA or other applicable laws.

16. On April 25, 2014, Uber announced a new "three-step" background check policy that includes "county, federal, and multi-state checks." Uber further announced that "[w]e apply this comprehensive and new industry standard consistently across all Uber products, including uberX."

17. Subsequently, Plaintiff through Abbey requested further information regarding Plaintiffs' consumer background report. Following several requests for information, Uber informed Plaintiff that his consumer background report was produced by a company called Hirease, Inc., an employment background screening company located in North Carolina. Pursuant to Plaintiff's request, Hirease provided Plaintiff with a copy of his consumer background report on May 2, 2014.

18. On October 29, 2014, Uber announced that it is "on track to complete more than 2 million background checks of potential drivers in 2014, which Uber has noted is among the highest totals of any major corporation in the world."

## FACTUAL ALLEGATIONS COMMON TO ALL FCRA CLASS MEMBERS

19. 15 U.S.C. § 1681b(b)(2)(A) governs the conduct of any person who obtain consumer background reports used for employment purposes:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

20. Uber failed to provide Plaintiff and the putative class "clear and conspicuous" notice in a written document that consists solely of the disclosure that it may procure consumer background reports for employment purposes.

21. Similarly, Uber failed to obtain written authorization from Plaintiff and the putative class prior to obtaining consumer background reports for employment purposes.

22. 15 U.S.C. § 1681b(3)(A) governs the conduct of any person who uses a consumer background report to take adverse action against consumers with respect to their employment:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

23. The purpose of 15 U.S.C. § 1681b(3)(A) is to inform consumers of their rights under the FCRA and provide them an opportunity to review the consumer report and correct any inaccuracies before any adverse actions are taken.

24. Uber failed to provide Plaintiff and the putative class with a summary of their rights under the FCRA prior to taking adverse actions against them, including termination of their employment and suspension and/or deactivation of their user accounts.

25. Uber further failed to provide Plaintiff and the putative class a copy of their consumer background reports prior to taking adverse actions against them, including termination of their employment and suspension and/or deactivation of their user accounts.

26. Defendants acted willfully in violating the requirements of the FCRA. Defendants knew or should have known about their obligations under the FCRA. These obligations are well-established by the plain language of the FCRA and in the promulgations and opinion letters of the Federal Trade Commission.

27. Despite Uber's awareness of its legal obligations, Uber acted consciously in breaching its known duties and depriving Plaintiff and other class members of their rights under the FCRA. At minimum, Uber's conduct was reckless in failing to make an appropriate inquiry to ascertain its obligations under the FCRA.

28. As a result of these FCRA violations, Uber is liable to Plaintiff and the putative class for statutory damages of $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3). Plaintiff and the putative class are also entitled to equitable relief against Uber enjoining further violations of the FCRA.

## CLASS ALLEGATIONS

29. Plaintiff brings this action in his individual capacity and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following "FCRA Disclosure Class" and "FCRA Consent Class:"

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked as an Uber driver or applied to become an Uber driver on or after November 26, 2009 and received inadequate disclosure prior to consumer report procurement as required by 15 U.S.C. § 1681b(b)(2)(A)(i).

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked as an Uber driver or applied to become an Uber driver on or after November 26, 2009 and did not provide written consent prior to consumer report procurement as required by 15 U.S.C. § 1681b(b)(2)(A)(ii).

30. Plaintiff also brings this action in his individual capacity and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following "FCRA Consumer Report Copy Class" and "FCRA Summary of Rights Class:"

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked as an Uber driver or applied to become an Uber driver on or after November 26, 2009 and was subject to an adverse action based in whole or in part on information contained in the consumer report without receiving a copy of the consumer report at least five business days prior to the adverse action as required by 15 U.S.C. § 1681b(b)(3)(i).

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked as an Uber driver or applied to become an Uber driver on or after November 26, 2009 and was subject to an adverse action based in whole or in part on information contained in the consumer report without receiving a written description of their rights under the FCRA at least five business days prior to the adverse action as required by 15 U.S.C. § 1681b(b)(3)(ii).

31. **Numerosity** – Plaintiff is informed and believes and thereon alleges that the putative class exceeds 500 persons. Information concerning the exact size of the putative class is within the possession of Defendant. The putative class is so numerous that joinder of all members is impractical.

32. **Commonality** – Common questions of fact and law exist as to all class members and predominate over any questions that effect only individual class members, including by example only and without limitation, the following:

    a. Whether Defendant had a policy and/or practice of procuring or causing to be procured consumer reports for its drivers and applicants;

    b. Whether Defendant had a policy and/or practice of providing clear and conspicuous notice in a written document that consists solely of the disclosure that it may procure consumer reports for its drivers and applicants;

    c. Whether Defendant had a policy and/or practice of obtaining written authorization from its drivers and applicants prior to procuring consumer reports;

    d. Whether Defendant had a policy and/or practice of providing copies of consumer reports to its existing drivers and applicants at least five business days prior to taking any adverse action based in whole or in part on the consumer reports;

    e. Whether Defendant had a policy and/or practice of providing a written description of FCRA rights to its drivers and applicants at least five business days prior to taking any adverse action based in whole or in part on a consumer report;

    f. Whether any written description of FCRA rights provided to its drivers and applicants is legally sufficient;

    g. Whether Defendant willfully failed to comply with the FCRA;

    h. The proper measure of statutory and punitive damages and the availability and appropriateness of declaratory and injunctive relief;

33. **Typicality** – Plaintiff's claims are typical of the claims of the putative class in that: (1) Plaintiff is a member of the class; (2) Plaintiff's claims arise from the same practice or course of conduct that forms the basis of the class claims; (3) Plaintiff's claims are based upon the same legal and remedial theories as those of the class and involve similar factual circumstances; (4) there is no antagonism between the interests of Plaintiff and absent class members; (5) the injuries that Plaintiff suffered are similar to the injuries that class members have suffered.

34. **Adequacy** – Plaintiff will fairly and adequately represent the class in that: (1) there is no conflict between Plaintiff's claims and those of other class and subclass members; (2) Plaintiff had retained counsel who are skilled and experienced in class actions and who will vigorously prosecute this litigation; (3) Plaintiff's claims are typical of the claims of class members.

## PAGA REPRESENTATIVE ACTION ALLEGATIONS

35. On September 4, 2014, Plaintiff gave written notice by certified mail of Uber's violations of various provisions of the California Labor Code as alleged in this complaint to the Labor and Workforce Development Agency ("LWDA") and Uber.

36. The LWDA did not provide notice of its intention to investigate Uber's alleged violations within thirty-three (33) calendar days of the September 4, 2014 postmark date of the notice sent by Plaintiff. *See* Cal. Lab. Code § 2699.3(a)(2)(A).

37. Plaintiff is informed and believes and thereon alleges that Uber uniformly misclassifies all of its drivers as independent contractors when they are, in fact, employees.

38. Uber exerts significant control over its drivers. For example, Uber drivers must adhere to rules regarding the cleanliness of their car, their clothing, the timeframe within which they pick up a customer following a request, and must provide transportation for at least one customer per month.

39. As a result, Uber failed to provide Plaintiff and other aggrieved employees with itemized wage statements, minimum and overtime wages, lawful meal or rest periods, and reimbursement for necessary expenses. Uber also failed to keep accurate payroll records showing aggrieved employees' hours worked and wages paid. Moreover, Uber retained all gratuities owed to aggrieved employees despite representing to its customers that gratuity is included in the total cost of the car service. Gratuities of 15-20% are customary in the car service industry.

40. Plaintiff further alleges that Uber violated PAGA in the following ways: (1) Uber has failed to provide prompt payment of wages to driver employees upon termination and resignation in violation of Labor Code §§ 201, 202, 203; (2) Uber has failed to provide itemized wage statements to driver employees in violation of Labor Code §§ 226(a), 1174, and 1174.5; (3) Uber has failed to provide meal and rest periods in violation of Wage Order No. 9 and Labor Code §§ 226.7, 512, and 558; (4) Uber has willfully misclassified its driver employees in violation of Labor Code § 226.8; (5)

Uber has retained portions of gratuities intended for driver employees in violation of Labor Code § 351; (6) Uber has failed to keep required payroll records in violation of Wage Order No. 9 and Labor Code §§ 1174 and 1174.5; (7) Uber has failed to pay overtime wages in violation of Wage Order No. 9 and Labor Code §§ 510, 558, 1194 and 1198; (8) Uber has failed to pay minimum wages in violation of Wage Order No. 9 and Labor Code §§ 1182.12, 1194, and 1197; (9) Uber has failed to reimburse driver employees for all reasonably necessary expenditures and losses incurred by driver employees in direct consequence of the discharge of their duties, including but not limited to fuel, insurance, maintenance, and toll costs, in violation of Labor Code § 2802.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(15 U.S.C. § 1681b(b)(2)(A)(i))**

41.  Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

42.  Uber willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) because it failed to provide Plaintiff and the putative class "clear and conspicuous" notice in a written document that consists solely of the disclosure that it may procure consumer background reports for employment purposes.

43.  Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

44.  Plaintiff seeks punitive damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

45.  In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. § 1681o.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(15 U.S.C. § 1681b(b)(2)(A)(ii))**

46.  Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

47. Uber willfully violated 15 U.S.C. § 1681b(b)(2)(A)(ii) because it failed to obtain written authorization from Plaintiff and the putative class prior to obtaining consumer background reports for employment purposes.

48. Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

49. Plaintiff seeks punitive damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

50. In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks appropriate remedy, if any, under 15 U.S.C. § 1681o.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## (15 U.S.C. § 1681b(b)(3)(i))

51. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

52. Uber willfully violated 15 U.S.C. § 1681b(3)(A)(i) because it failed to provide Plaintiff and the putative class with a summary of their rights under the FCRA prior to taking adverse actions against them, including termination of their employment and suspension and/or deactivation of their user accounts.

53. Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

54. Plaintiff seeks punitive damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

55. In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks appropriate remedy, if any, under 15 U.S.C. § 1681o.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(15 U.S.C. § 1681b(b)(3)(ii))**

56. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

57. Uber willfully violated 15 U.S.C. § 1681b(b)(2)(A)(ii) because it failed to provide Plaintiff and the putative class a copy of their consumer background reports prior to taking adverse actions against them, including termination of their employment and suspension and/or deactivation of their user accounts.

58. Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

59. Plaintiff seeks punitive damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

60. In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks appropriate remedy, if any, under 15 U.S.C. § 1681o.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT**
**(Cal. Civ. Code § 1786.16(2)(B))**

61. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

62. Plaintiff alleges this cause of action on an individual basis only.

63. Uber willfully violated California Civil Code § 1786.16(2)(B) because it failed to provide Plaintiff "clear and conspicuous" notice of the following in a written document that consists solely of the disclosure: (1) that it may procure a consumer background report for employment purposes; (2) the permissible purpose of the report; (3) that the disclosure may including information on the consumer's character, general reputation, personal characteristics, and mode of living; (4) identification of the name, address, and telephone number of the investigative consumer reporting

1  agency conducting the investigation; (5) notification of the nature and scope of the investigation
2  requested, including a summary of the provisions of California Civil Code § 1786.22.

3        64.     Plaintiff seeks statutory damages for himself for the violation pursuant to California
4  Civil Code § 1786.16(2)(B).

5        65.     Plaintiff seeks punitive damages for this violation pursuant to California Civil Code
6  § 1786.50(b).

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT**
**(Cal. Civ. Code § 1786.16(a)(2)(C))**

10       66.     Plaintiff re-alleges and incorporates by reference the allegations contained in the
11 paragraphs above as if fully set forth herein.

12       67.     Plaintiff alleges this cause of action on an individual basis only.

13       68.     Uber willfully violated California Civil Code § 1786.16(a)(2)(C) because it failed to
14 obtain written authorization from Plaintiff prior to obtaining a consumer background report for
15 employment purposes.

16       69.     Plaintiff seeks statutory damages for this violation pursuant to California Civil Code
17 § 1786.16(a)(2)(B).

18       70.     Plaintiff seeks punitive damages for this violation pursuant to California Civil Code
19 § 1786.50(b).

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT**
**(Cal. Civ. Code § 1786.16(b))**

23       71.     Plaintiff re-alleges and incorporates by reference the allegations contained in the
24 paragraphs above as if fully set forth herein.

25       72.     Plaintiff alleges this cause of action on an individual basis only.

26       73.     Uber willfully violated California Civil Code § 1786.16(b)(1) because it failed to
27 provide, by means of a box to check on a written form, the opportunity to request and receive a copy of
28 the consumer background report obtained for Plaintiff. Uber also willfully violated California Civil

Code § 1786.16(b)(1) because if failed to provide Plaintiff with a copy of his consumer background report within three days of request.

74. Plaintiff seeks statutory damages for this violation pursuant to California Civil Code § 1786.16(a)(2)(B).

75. Plaintiff seeks punitive damages for this violation pursuant to California Civil Code § 1786.50(b).

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE PRIVATE ATTORNEYS GENERAL ACT ("PAGA")**
**(California Labor Code § 2698 *et seq.*)**

76. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

77. Plaintiff is an "aggrieved employee" under PAGA, as he was employed by Uber during the applicable statutory period and suffered one or more of the Labor Code violations set forth herein. Accordingly, he seeks to recover on behalf of himself and all other current and former aggrieved employees of Uber, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

78. Plaintiff seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court* (2009) 46 Cal. 4th 969. Therefore, class certification of the PAGA claims is not required, but Plaintiff may choose to seek certification of the PAGA claims.

79. Plaintiffs seek civil penalties pursuant to PAGA for violations of the following Labor Code provisions:

    a. failure to provide prompt payment of wages to driver employees upon termination and resignation in violation of Labor Code §§ 201, 202, 203;

    b. failure to provide itemized wage statements to driver employees in violation of Labor Code §§ 226(a), 1174, and 1174.5;

    c. failure to provide meal and rest periods in violation of Wage Order No. 9 and Labor Code §§ 226.7, 512, and 558;

    d. willfully misclassifying its driver employees in violation of Labor Code § 226.8;

     e.    failure to provide gratuities intended for driver employees in violation of Labor Code § 351;

     f.    failure to keep required payroll records in violation of Wage Order No. 9 and Labor Code §§ 1174 and 1174.5;

     g.    failure to pay overtime wages in violation of Wage Order No. 9 and Labor Code §§ 510, 558, 1194 and 1198;

     h.    failure to pay minimum wages in violation of Wage Order No. 9 and Labor Code §§ 1182.12, 1194, and 1197;

     i.    failure to reimburse driver employees for all reasonably necessary expenditures and losses incurred by driver employees in direct consequence of the discharge of their duties, including but not limited to fuel, insurance, maintenance, and toll costs, in violation of Labor Code § 2802;

     j.    failure to provide itemized wage statements to driver employees in violation of Labor Code §§ 226(a).

80. With respect to violations of Labor Code § 226(a), Labor Code § 226.3 imposes a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation of Labor Code § 226(a).

81. With respect to violations of Labor Code §§ 510, 512, Labor Code § 558 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. Moreover, Plaintiff seeks civil penalties in the amount of unpaid wages owed to aggrieved employees pursuant to Labor Code § 558(a)(3).

82. With respect to violations of Labor Code § 1174, Labor Code § 1174.5 imposes a civil penalty of $500.

83. Labor Code § 2699 *et seq*. imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for initial violations, and two hundred dollars ($200) pay period, per aggrieved employee for subsequent violations for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code §§ 226.7, 226.8, 1174, 1182.12, 1194, 1197, 1198, and 2802.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment against Defendants as follows:

A. Certification of Plaintiff's FCRA claims as a class action pursuant to Federal Rule of Civil Procedure 23;

B. Appointment of Plaintiff Gillette and Plaintiff's Counsel as class representative and Class Counsel respectively;

C. Class notice to all Uber drivers nationwide who worked for Uber during the five years prior to the filing of the original Complaint through the trial of this action;

D. Declaratory and injunctive relief, including an order preliminarily and permanently enjoining Uber from engaging in the practices challenged herein;

E. An award of actual or statutory damages to Plaintiff and the Class pursuant to 15 U.S.C. § 1681n(a)(1)(A) in an amount subject to proof at trial;

F. An award of punitive damages to Plaintiff and the Class pursuant to 15 U.S.C. § 1681n(a)(2) and California Civil Code § 1786.50(b);

G. An award of actual or statutory damages to Plaintiff pursuant to California Civil Code § 1786.50(a)(2) in an amount subject to proof at trial;

H. An award of civil penalties pursuant to PAGA;

I. An award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3), California Code of Civil Procedure § 1021.5, California Civil Code § 1786.50(a)(2), California Labor Code § 2699(g) and/or other applicable law;

J. Pre-judgment and post-judgment interest as provided by law; and

K. Such other and further relief that the Court may deem just and proper.

Dated: November 26, 2014

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/*
Andrew P. Lee

Attorneys for Plaintiff and the putative class