UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD GILLETTE, *et al.*, | No. C-14-5241 EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO STAY PENDING APPEAL** |
| UBER TECHNOLOGIES, | **(Docket No. 54)** |
| Defendant. | |

## I. INTRODUCTION

On June 9, 2015, this Court denied a motion to compel arbitration filed by Defendant Uber Technologies in the instant action. *See Mohamed v. Uber Techs., Inc.*, -- F. Supp. 3d. --, 2015 WL 3749716 (N.D. Cal. 2015).[1] Uber has appealed this Court's order to the Ninth Circuit. *See* Ninth Circuit Case No. 15-16181. Currently pending before the Court is Uber's motion to stay these proceedings pending the resolution of its appeal. Docket No. 54 (Motion). Alternatively, Uber asks this Court for a temporary stay so that it can seek a stay of the action from the Ninth Circuit. For the reasons explained below and further for the reasons articulated on the record at the hearing for this matter, Uber's motion for a stay is **DENIED**.

---

[1] The Court consolidated the briefing of Uber's motion to compel arbitration in this action with a motion to compel arbitration brought by Uber and Uber's co-defendants in *Mohamed v. Uber Technologies*, Case No. 14-cv-5200. The Court issued an identical order in each case denying Uber's motions to compel arbitration, although as described in the main text below, the Court's reasoning in the two cases is materially different because the arbitration agreements at issue are different.

## II. DISCUSSION

### A. Procedural History

The Court assumes familiarity with the procedural history of this case, particularly as described it its Order Denying Defendants' Motions to Compel Arbitration. *Mohamed*, 2015 WL 3749716. For the purposes of this motion, however, it is important to keep in mind that there are essentially two separate versions of the arbitration clauses at issue; the arbitration clause contained in the 2013 Agreement between Uber and its drivers, and the arbitration clause in the 2014 Agreements between Uber and its drivers. *Id.* at *3. "It is undisputed that Gillette could only be bound to the 2013 Agreement. . . ." *Id.*

As the Court recognized in its earlier Order, "there are significant differences between the 2013 Agreement's arbitration provision and the ones contained in each of the 2014 contracts . . . ." *Mohamed*, 2015 WL 3749716, at *4. These differences are particularly relevant to the instant motion to stay, because the Court believes Uber is far less likely to succeed on the merits of its appeal of this Court's Order refusing to compel arbitration pursuant to the 2013 Agreement (*i.e.*, its Order in this case) than it is with respect to this Court's Order refusing to compel arbitration pursuant to the 2014 Agreements (*i.e.*, its Order in the *Mohamed* action).

### B. Legal Standard

Whether to issue a stay pending appeal is "an exercise of judicial discretion . . . to be guided by sound legal principles." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *see also Guifu Li v. A Perfect Franchise, Inc.*, No. 10-cv-1189-LHK, 2011 WL 2293221, at *2 (N.D. Cal. Jun. 8, 2011). In determining whether a stay should issue, the Court should consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors a stay.

*In re Carrier IQ Consumer Privacy Litig.* (*In re Carrier IQ*), No. C-12-md-2330 EMC, 2014 WL 2922726, at *1 (N.D. Cal. Jun. 13, 2014) (citations omitted); *see also Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011).

2

In order to satisfy the first factor, although the moving party need not show that "success on appeal is more likely than not," *Guifu Li*, 2011 WL 2293221, at *3 (citation omitted), it must make a "strong showing" on the merits. *Morse v. Servicemaster Global Holdings, Inc.*, No. C10-628-SI, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013) (citing *Leiva-Perez*, 640 F.3d at 964). Alternatively, the moving party can attempt to satisfy the first factor by showing that its appeal raises "serious legal questions," even if the moving party has only a minimal chance of prevailing on these questions. *See In re Carrier IQ*, 2014 WL 2922726, at *1 (recognizing that under Ninth Circuit law, the above factors "are considered on a continuum; thus, for example, a stay may be appropriate if the party moving for a stay demonstrates that serious legal questions are raised and the balance of hardships tips sharply in its favor") (citing *Golden Gate Rest. Ass'n v. City and Cnty. of S.F.*, 512 F.3d 1112, 1115-16 (9th Cir. 2008)). Where only such a lesser showing is made, the appellant must further demonstrate that the balance of the hardships absent a stay tips "sharply" in its favor. *See Morse*, 2013 WL 123610, at *1-2 (explaining that a party seeking a stay pending appeal must either: (1) make a strong showing it is likely to succeed on the merits and show it will be irreparably harmed absent a stay, or (2) demonstrate that its appeal presents a serious question on the merits and the balance of hardships tilts *sharply* in its favor). "The party requesting the stay . . . bears the burden of showing that the case's circumstances justify favorable exercise of [the Court's] discretion."[2] *Morse*, 2013 WL 123610, at *1 (citing *Nken*, 556 U.S. at 433-34).

C.  <u>Uber is Unlikely to Succeed on the Merits Regarding the 2013 Agreement and its Appeal Raises No Serious Legal Issues</u>

Uber argues that a number of this Court's determinations with respect to the 2013 Agreements are erroneous, and that Uber has a "fair prospect" of convincing the Ninth Circuit of

---

[2] Uber cites *Steiner v. Apple Computer, Inc.*, No. C-07-4486 SBA, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008), for the proposition that "almost every California district court to recently consider whether to stay a matter, pending appeal of an order denying a motion to compel arbitration has issued a stay." *Id.* While Judge Armstrong was correct at the time her decision issued in April 2008, the Court's own research demonstrates that it is no longer accurate to say that most courts grant stays in these circumstances. In fact, according to this Court's unofficial tally of decisions since *Steiner*, California district courts have denied stays pending appeal of an order denying a motion to compel arbitration twelve times, while California district courts have granted such motions eight times.

3

such. The Court disagrees, and finds that Uber has not established that it has a sufficient likelihood of success on the merits, nor does Uber's appeal of this Court's order vis-a-vis the 2013 Agreement present any serious legal issues. Because Uber cannot even satisfy the first factor of the Ninth Circuit test for a stay, the Court denies the stay without analyzing the remaining three factors. *See Newton v. Am. Debt Servs., Inc.*, No. 11-cv-3228-EMC, 2012 WL 3155719, at *8 (N.D. Cal. Aug. 2, 2012) ("Because the Court does not find there to be even a serious legal question, let alone a likelihood of success on the merits, it need not conduct any balancing of interests (*i.e.*, injury to Defendants if a stay were not granted and injury to Plaintiff if a stay were issued).").

### 1. Uber's Delegation Clause is Unenforceable

Uber first argues that it has a "fair probability of persuading the Ninth Circuit that the delegation provision in the Agreements between Uber and Plaintiff[s] clearly and unmistakably delegate[s] arbitrability issues to the arbitrator alone." Mot. at 3. Uber is mistaken. Uber claims that the Court erred by finding a conflict between the delegation language contained within the arbitration provision itself, and certain other conflicting language contained in separate sections of the 2013 Agreement. According to Uber, as long as the language of the arbitration provision itself "clearly and unmistakably" delegates arbitrability to an arbitrator, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), it is of no moment that another provision in the contract contradicts the delegation language in the arbitration provision.[3]

The Court has previously rejected Uber's argument in its Order, *Mohamed*, 2015 WL 3749716, at *11 n. 17, and the argument is no more convincing now. Notably, Uber has failed to cite a single case that stands for the proposition that it advocates.[4] And even more notably, Uber has again failed to recognize that with respect to the 2013 Agreement's delegation clause, the Court

---

[3] For instance, Uber apparently would argue that an otherwise clear delegation clause is enforceable as long as it appears in its own separate section of a contract, even if the very first sentence of the contract read "arbitrability can *never* be decided by an arbitrator." Uber's argument is short on both legal authority and common sense.

[4] As the Court noted in its Order, *Boghos v. Certain Underwrites at Llyod's of London*, 36 Cal. 4th 495 (2005), is of no assistance to Uber. In that case, the California Supreme Court was not called upon to evaluate the validity of a delegation clause. *Id.* Indeed, rather than being required to apply the heightened "clear and unmistakable" standard that applies to delegation clauses, the *Boghos* court applied the "presumption favoring arbitration." *Id.* at 502.

specifically found a significant conflict between provisions *within* the arbitration clause itself. *See Mohamed*, 2015 WL 3749716, at *9-10. Indeed, the Court found that two clauses within the arbitration clause of the 2013 Agreement "are facially inconsistent with each other and thus, *for this reason alone*, the heightened 'clear and unmistakable' test is not met with respect to the delegation clause contained in the 2013 Agreement." *Id.* at *10 (emphasis added). Thus, even if Uber were somehow able to convince the Ninth Circuit to ignore all of the conflicting language that appears outside the arbitration provision in the 2013 Agreement, that contract's delegation clause would nevertheless remain unenforceable under the "clear and unmistakable" test. *See id.*, at *11 n. 17 ("Uber overlooks the fact that with respect to the 2013 Agreement, there is tension within the arbitration provision itself."); *see also Newton*, 2012 WL 3155719, at *8 (denying a motion to stay where "there were other independent grounds supporting the Court's [unenforceability] determination" that the moving party did not challenge in its motion to stay).

Uber's alternative arguments with respect to this Court's holding regarding the delegation clause are similarly unavailing, and not likely to succeed on appeal. For instance, Uber argues that the Ninth Circuit is likely to follow *Hill v. Anheuser-Busch InBev Worldwide, Inc.*, which held that an express delegation provision was "clear and unmistakable" notwithstanding a broader contractual term that directly conflicted with the language of the delegation clause. No. 14-cv-6289 PSG, 2014 U.S. Dist. LEXIS 168947, at *11-13 (C.D. Cal. Nov. 26, 2014). As this Court already explained, *Hill* did not apply the correct legal standard to the question presented to it, and likely reached an erroneous result as a consequence. *See Mohamed*, 2015 WL 3749716, at *11 n. 19. The Court finds it unlikely that the Ninth Circuit will reverse this Court on the basis of one unpublished district court opinion that did not appear to apply the correct legal standard.

Nor is the Ninth Circuit likely to agree with Uber that this Court erred by "rel[ying] in part on the purported lack of sophistication of drivers who use the Uber app" in finding the delegation clauses insufficiently clear and unmistakable. Mot. at 4. This Court did *not* rely on this factor. As the Court made clear, "Uber's delegation clauses are not sufficiently clear and unmistakable to be enforced even against a legally sophisticated entity." *Mohamed*, 2015 WL 3749716, at *10 n. 16. Thus, regardless of whether the Court is ultimately deemed correct in its suggestion that the clear

5

and unmistakable test "*should* be viewed from the perspective of the particular parties to the specific contract at issue," that is of no moment here, because the Court expressly concluded that Uber's Agreements do not satisfy even the least demanding version of the applicable test. *Id.* (emphasis added).

Put simply, Uber has not shown even a likelihood of success on the merits of its appeal of this Court's determination that the delegation clause in the 2013 Agreement is not enforceable because it does not clearly and unmistakably delegate arbitrability to an arbitrator.

### 2. The 2013 Agreement's Arbitration Provision is Unconscionable

Uber also argues that it is reasonably likely to succeed in convincing the Ninth Circuit that this Court erred in determining that its arbitration provision is unconscionable as a matter of California law. Again, the Court finds that Uber has overestimated its likelihood of success.

#### a. Illusory Opt-Out Provision

Uber first argues that the Ninth Circuit will reverse this Court's determination that the 2013 Agreement is procedurally unconscionable, because that Agreement contains an opt-out provision that purports to allow drivers to avoid the arbitration provisions altogether. Mot. at 5-6. Uber's argument fails to acknowledge, however, that even under the Ninth Circuit cases it cites as binding precedent to this Court,[5] the 2013 Agreement is procedurally unconscionable because the opt-out provision in that contract was extremely onerous to comply with and ultimately illusory. *See Mohamed*, 2015 WL 3749716, at *12-13. Put differently, even if this Court was wrong to hold that *Ahmed*, *Najd*, and *Kilgore* cannot be followed because they "failed to apply California law as announced by the California Supreme Court," *id.* at *17, the 2013 Agreement would still be procedurally unconscionable under the Ninth Circuit's interpretation of California law because the opt-out right in that contract was not conspicuous or "meaningful." *Ahmed*, 283 F.3d at 1200; *see also Kilgore*, 718 F.3d at 1059.

---

[5] Uber cites to *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002), and *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013) (en banc).

At the hearing, counsel for Uber suggested this Court erred in finding the 2013 Agreement's opt-out provision to be illusory as a matter of law, and specifically claims that the Court erred where it found that "Uber presented no evidence to this Court that even a single driver opted-out of the 2013 Agreement's arbitration clause." *Mohamed*, 2015 WL 3749716, at *13; *see also* Docket No. 64 (Hrg. Tr.) at 14:8-15:1. First, Uber admits that the Court's statement in its Order is accurate – Uber did *not* present the Court with any evidence regarding whether a single driver had successfully opted out of the 2013 Agreement. *See id.*; *see also* Mot. at 5 n.3. Under such circumstances, the Ninth Circuit is unlikely to find error. More fundamentally, however, the fact that Uber now claims that it is undisputed that roughly 270 drivers *did* successfully opt out of the 2013 Agreement's arbitration provision does not undercut this Court's legal conclusion that the opt-out right in that contract was largely illusory. *See* Hrg. Tr. at 14:13-17 (Uber's counsel arguing that it is undisputed roughly 269 drivers opted out of the 2013 arbitration agreement). In other filings with this Court, Uber claims there are roughly 160,000 Uber drivers in California alone. *See, e.g.*, *O'Connor v. Uber Techs.*, No. 13-cv-3826, Docket No. 298 at 1. The fact that only about 270 of Uber's phalanx of drivers successfully opted out of the 2013 Agreement arbitration clause thus supports, rather than undermines, this Court's conclusion that the opt-out right in the 2013 Agreement was essentially illusory and ineffective. In any event, "this Court has significant doubts that the California Supreme Court would vindicate an opt-out clause simply because a few signatories out of thousands were able to (and did) successfully opt-out." *Mohamed*, 2015 WL 3479716, at *13 (citations omitted).

### b. Cost-Splitting

Uber next argues that it is likely to succeed on its appeal because this Court erred where it concluded that a provision requiring its drivers to pay substantial arbitration fees of a type they would not face in court is substantively unconscionable under California law. Mot. at 6-7. Uber contends that the U.S. Supreme Court has held that a court should not "tally the costs and burdens [of arbitration] to particular plaintiffs in light of their means" when determining whether to enforce an arbitration provision, and hence argues that the FAA preempts California law on this issue. Mot. at 6 (quoting *American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2312 (2013)); *see also* Hrg. Tr. at 13:6-9 (Uber's counsel arguing that the relevant legal principle announced in

*Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83 (2000) is pre-empted under the FAA).

The Court first notes that Uber did not adequately present this argument in its motion to compel arbitration in order to preserve it for appeal; the Ninth Circuit is therefore unlikely to address it. *See Mohamed*, 2015 WL 3479716, at *14 n.22; *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed on below.").

Moreover, Uber takes the above-quotation from *Italian Colors* out of context[6] – there is nothing in the *Italian Colors* decision that suggests that the FAA preempts a state law rule, like California's, that prohibits the imposition of substantial forum fees on employees (or putative employees) who are attempting to vindicate their statutory rights. In fact, as this Court pointed out in its Order, the *Italian Colors* majority expressly recognized that an arbitration agreement may be invalidated if "filing and administrative fees attached to arbitration [] are so high as to make access to the forum impracticable." *Italian Colors*, 133 S.Ct. at 2310-11; *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights.").

Uber's alternative contention fares no better. Uber argues that "numerous courts have rejected claims of substantive unconscionability *in this exact context* – where one party claims that a delegation clause is substantively unconscionable because of the arbitration fees and costs he would be required to incur." Mot. at 7 (emphasis added). Uber's claim that its cited cases arise "in this exact context" is false – none of the cases cited by Uber is on point. *Gilbert v. Bank of Am.*, No. C-13-01171-JSW, 2015 WL 1738017 (N.D. Cal. Apr. 8, 2015) is not an employment case, and thus Judge White had no occasion to apply or consider the substantive unconscionability rule this Court

---

[6] The language Uber cites held that a court cannot consider the costs and burdens of actually litigating a claim on an individual basis in deciding whether a class action waiver is enforceable under the FAA. *Italian Colors*, 133 S.Ct. at 2308 (reversing decision that had held that a class action waiver was unconscionable because "the costs of an expert analysis necessary to prove the antitrust claims would be at least several hundred thousand dollars . . . while the maximum recovery for an individual plaintiff would be $12,850, or $38,549 when trebled"). The Court was not addressing whether imposition of arbitration *forum fees* was unconscionable under state law.

8

applied from *Armendariz*.[7]  *See Armendariz*, 24 Cal. 4th at 110 (holding that any clause in an *employment* agreement that would impose substantial forum fees on an employee in her attempt to vindicate her unwaivable statutory rights is contrary to pubic policy and therefore substantively unconscionable).  Moreover, the clause at issue in *Gilbert* provided that the plaintiffs would *not* have to pay any arbitration filing fees, let alone the substantial fees Uber drivers would be required to pay to start arbitration here.  *Gilbert*, 2015 WL 1738017, at *6 (finding fee-splitting provision conscionable, and noting that "the Arbitration Provisions provide that Cash Yes or a related third party will advance, *inter alia*, any filing fees").  Thus, *Gilbert* is inapposite.

Uber's next two cases similarly do not arise in the "exact context" of this case because neither apply California law, as this Court was required to apply here under the express terms of the contracts.  In *Mercadante*, the district court applied North Carolina law.  2015 WL 186966, at *9.  And the court in *Womack* appears to have been applying Missouri law.  *See Womack v. Career Educ. Corp.*, No. 11-cv-1003 RWS, 2011 WL 6010912, at *2 (E.D. Mo. Dec. 2, 2011).  Moreover, the plaintiffs in *Womack* "failed to specifically challenge the provision of the agreement which allows the arbitrator to decide enforceability of the arbitration clause," and thus the Court explicitly declined to rule on plaintiff's unconscionability challenge to the fee splitting provision, holding instead that "the arbitrator must decide the enforceability of the arbitration agreement."  *Id.*

Finally, *Madrigal v. AT&T Wireless Servs.* is not on point because there the plaintiffs "provided no evidence that the cost of submitting threshold questions of arbitrability to the arbitrator is so high as to impeded [sic] Plaintiff's ability to challenge the arbitration agreement."  No. 9-cv-33-OWW-MJS, 2010 WL 5343299, at *7 (E.D. Cal. Dec. 20, 2010).  By contrast here, the Court found that the Plaintiffs "*have* made a sufficient showing that they would be subject to hefty fees of a type they would not face in court if they are forced to arbitrate arbitrability . . . ."  *Mohamed*, 2015 WL 3749716, at *15 (emphasis in original).  At bottom, none of Uber's arguments raised in its motion to stay are sufficiently strong to warrant a finding that Uber has even a fair likelihood of

---

[7] In fact only one of Uber's cited cases is an employment case: *Mercadante v. XE Servs., LLC*, No. CV-11-1044 (CKK), 2015 WL 186966, at *9 (D.D.C. Jan. 15, 2015).

1  success on the merits of its appeal regarding this Court's determination that the arbitration provision
2  in the 2013 Agreement is unenforceable.

3        3.      <u>No "Serious Question"</u>

4        For the reasons stated above, Uber has not identified any "serious legal questions" presented
5  by its appeal on the issues previously discussed. But Uber further argues that whether the FAA
6  preempts the California Supreme Court's ruling in *Iskanian v. CLS Transp. L.A., LLC*, that pre-
7  dispute PAGA waivers are unenforceable as a matter of California law, presents a serious legal
8  question. While the Court agrees that this *Iskanian* preemption issue raises a serious question, it is
9  not a question materially presented *in this appeal*. This is because the Court found that the 2013
10 Agreement's arbitration provision would fail even if it did not contain an illegal PAGA waiver, as it
11 is "permeated" by four other substantively unconscionable terms. *See Mohamed*, 2015 WL
12 3479716, at *31 ("The Court finds that the presence of these four unconscionable terms, and in
13 particular the arbitration fee-shifting and confidentiality provisions, render the 2013 Agreement's
14 arbitration clause permeated with unconscionability."); *see also id.* (finding that "the 2013
15 Agreement's arbitration provision is permeated with substantively unconscionable terms, *in
16 addition* to the invalid PAGA waiver") (emphasis added). Moreover, and unlike the 2014
17 Agreements at issue in *Mohamed*,[8] the 2013 Agreement is significantly procedurally
18 unconscionable, thereby requiring the Court to find less substantive unconscionability before
19 determining that the arbitration provision as a whole is unconscionable and unenforceable. *See id.* at
20 * 12 (noting that unconscionability "requires a showing of both procedural and substantive
21 unconscionability, balanced on a sliding scale"). In view of the significant procedural
22 unconscionability in the 2013 Agreement, the sliding scale test may be met with a less than robust
23 showing of substantive unconscionability. Because this Court can be affirmed with respect to the
24 2013 Agreement's invalidity regardless of how the *Iskanian* issue is ultimately decided, the validity

---

[8] Because the amount of procedural unconscionability that inheres in the 2014 Agreements is significantly lower than in the 2013 Agreements, this Court's determination that the non-severable PAGA waivers in the 2014 Agreements are substantively unconscionable takes on considerably more importance to the overall outcome. Indeed, the Court will grant a partial stay pending appeal in *Mohamed* for largely this reason.

of *Iskanian* does not present a serious legal question *in this appeal*. *See Newton*, 2012 WL 3155719, at *8 ("As for the second issue, even if there were a serious legal question, Defendants run into a different problem, *i.e.*, there were other independent grounds supporting the Court's unconscionability determination."). Thus, Uber's motion for a stay pending appeal is denied.

Finally, because the Ninth Circuit would be obligated to perform the same analysis this Court just engaged in if Uber asks the Circuit for a stay pending appeal, the Court further denies Uber's request for a temporary stay of this action so it can request a stay from the Ninth Circuit.

### III. CONCLUSION

Uber's motion for a stay of this action pending appeal is denied because Uber has not shown it has a sufficient probability of success on the merits of its appeal, nor has it shown that its appeal raises any serious questions that would bear on the impact of the appeal.

This order disposes of Docket No. 54.

IT IS SO ORDERED.

Dated: July 22, 2015

_____
EDWARD M. CHEN
United States District Judge

11