Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Andrew P. Lee (SBN 245903)
alee@gbdhlegal.com
William C. Jhaveri-Weeks (SBN 289984)
wjhaveriweeks@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:     (510) 763-9800
Fax:     (510) 835-1417

Meredith Desautels (SBN 259725)
mdesautels@lccr.com
Dana Isaac Quinn (SBN 278848)
disaac@lccr.com
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
     OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Tel:     (415) 543-9444
Fax:     (415) 543-0296

Attorneys for Plaintiffs and the putative class
(*Additional Counsel Listed on Following Page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD GILLETTE, SHANNON WISE, BRANDON FARMER, and MEGHAN CHRISTENSON, individually, and on behalf of all others similarly-situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC., a California corporation; RASIER, LLC, a Delaware limited liability company,<br><br>     Defendants. | Case No.: 3:14-cv-05241-EMC<br><br>CLASS AND REPRESENTATIVE ACTION<br><br>**SECOND AMENDED COMPLAINT**<br><br>1.  **Failure to Provide Notice of Obtaining Consumer Report in Violation of 15 U.S.C. § 1681b(b)(2)(A)(i);**<br><br>2.  **Failure to Obtain Authorization for Consumer Report in Violation of 15 U.S.C. § 1681b(b)(2)(A)(ii);**<br><br>3.  **Failure to Provide Consumer Report Prior to Taking Adverse Action in Violation of 15 U.S.C. § 1681b(b)(3)(A)(ii);**<br><br>4.  **Failure to Provide a Summary of Rights Prior to Taking Adverse Action in Violation of 15 U.S.C. § 1681b(b)(3)(A)(i)**<br><br>5.  **Violation of California Civil Code § 1785.1 *et seq.*** |

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.  **Failure to Provide Notice of Obtaining Consumer Report in Violation of California Civil Code § 1786.16(a)(2)(B)**

7.  **Failure to Obtain Authorization for Consumer Report in Violation of California Civil Code § 1786.16(a)(2)(C)**

8.  **Failure to Provide Opportunity to Request and Receive Copy of Consumer Report in Violation of California Civil Code  § 1786.16(b)**

9.  **Violation of the Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq*. – Based on Labor Code Violations Arising from Misclassification**

10. **Violation of the Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq*. – Based on Impermissible Credit Checks in Violation of Labor Code § 1024.5.**

**Demand for Jury Trial**

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
AHDOOT & WOLFSON, P.C.
1016 Palm Avenue
West Hollywood, CA  90069
Tel:      (310) 474-9111
Fax:      (310) 474-8585

Monique Olivier (SBN 190385)
monique@dplolaw.com
DUCKWORTH, PETERS,
LEBOWITZ OLIVIER LLP
100 Bush St. Suite 1800
San Francisco, CA 94104
Tel:      (415) 433-0333
Fax:      (415) 449-6556

*Attorneys for Plaintiffs and the Putative Class*

Plaintiffs RONALD GILLETTE, SHANNON WISE, BRANDON FARMER, and MEGHAN CHRISTENSON ("Plaintiffs"), on behalf of themselves and other similarly-situated individuals, bring this Class Action Complaint against UBER TECHNOLOGIES, INC. ("Uber") and RASIER, LLC ("Rasier") (collectively, "Defendants"), on behalf of themselves and all others similarly situated, and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action pursuant to the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, on a class basis, and the California Investigative Consumer Reporting Agencies Act ("ICRAA"), California Civil Code § 1786 *et seq.*, on an individual basis.

2.      Plaintiff Christenson also brings this action pursuant to the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.1 *et seq.* on behalf of herself and all others similarly situated.  She also brings this action pursuant to the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 *et seq.*, on a representative basis, for violations of California Labor Code § 1024.5, which prohibits consumer credit checks of employees or applicants, with certain exceptions not applicable here.

3.      Plaintiff Gillette also brings this action pursuant PAGA, California Labor Code § 2698 *et seq.* on a representative basis for violations of the Labor Code arising from Defendants' misclassification of drivers as independent contractors, rather than employees.

4.      The FCRA, ICRAA, CCRAA, and Labor Code §1024.5 impose on entities that use consumer background reports important safeguards designed to protect consumers like Plaintiffs. Plaintiff Gillette began working for Uber as a driver in approximately February 2013.  In April 2014, Uber abruptly closed Plaintiff Gillette's account and terminated his employment as a result of a consumer background report.  Uber, however, failed to notify Plaintiff Gillette or obtain his authorization prior to procuring his consumer background report.  Moreover, Uber failed to provide Plaintiff Gillette with a copy of his consumer background report and a description of his rights under the FCRA.  These actions amount to willful violations of the FCRA.

5.      Plaintiffs Wise and Farmer applied to work for Uber as drivers in September 2013 and April 2014, respectively.  Defendants denied their applications due to consumer background reports.

1

583451.6

1    Defendants, however, failed to notify Plaintiffs Wise and Farmer or obtain their written authorizations

2    prior to procuring their consumer background reports.  Defendants also failed to provide Plaintiffs

3    Wise and Farmer with copies of their consumer background reports and a description of their rights

4    under the FCRA prior to taking adverse action against them.  These actions amount to willful

5    violations of the FCRA.

6         6.        Plaintiff Christenson applied to work for Uber as an entry level, administrative Office

7    Manager in or around 2012.  Ms. Christenson is informed and believes that Defendants denied her

8    application due to a consumer credit background report.  However, Defendants failed to notify Plaintiff

9    Christenson or obtain her written authorization prior to procuring her consumer credit background

10   report.  Plaintiff Christenson did not learn that Defendants had procured her background report until

11   February 2015.  Moreover, Defendants failed to provide Plaintiff Christenson with a copy of her

12   consumer background report and a description of her rights under the FCRA prior to taking adverse

13   action against her.  These actions amount to willful violations of the FCRA, ICRAA, and CCRAA.   In

14   addition, the position for which Plaintiff Christenson applied did not fall within any category set forth

15   in Labor Code § 1024.5, and therefore Uber's procuring of her credit report was a Labor Code

16   violation, giving rise to a cause of action under PAGA.  Plaintiff Christenson seeks civil penalties on

17   behalf of herself and other aggrieved employees pursuant to PAGA on a representative basis.

18        7.        Plaintiff Gillette also brings this action pursuant to PAGA, for violations arising from

19   Defendants' misclassification of their drivers as independent contractors, when in fact they were, and

20   are, employees.  The California Labor Code requires employers to provide to its employees, among

21   others things, itemized wage statements, meal and rest periods, minimum and overtime wages,

22   reimbursement of necessary expenses, full and complete gratuities, and prompt payment of wages

23   upon termination.  Uber failed to comply with California Labor Code requirements due to the

24   erroneous classification of its drivers as independent contractors.  Plaintiff Gillette seeks civil penalties

25   on behalf of himself and other aggrieved employees pursuant to PAGA on a representative basis.

26                                      **JURISDICTION AND VENUE**

27        8.        This Court has jurisdiction over Plaintiffs' and putative class members' FCRA claims

28   pursuant to 28 U.S.C. § 1331.

583451.6

9.     This Court has supplemental jurisdiction over Plaintiffs' California state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendants reside in this judicial district, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

**PARTIES**

11.     Plaintiff Ronald Gillette is a resident of the City and County of San Francisco, California and a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and California Civil Code § 1786.2(b).  Plaintiff Gillette is a former employee of Uber who worked as a driver from approximately February 2013 to April 2014.  The acts complained of herein occurred within the two years preceding the initial filing of this Complaint and continue to the present.

12.     Plaintiffs Shannon Wise and Brandon Farmer are residents of the City of Oakland, County of Alameda, California, and are "consumers" within the meaning of 15 U.S.C. § 1681a(c) and California Civil Code § 1786.2(b).  Plaintiffs Wise and Farmer applied to become Uber drivers in September 2013 and April 2014, respectively, but were rejected by Defendants based on information contained in consumer background reports.  The acts complained of herein occurred within the two years preceding the filing of this Complaint and continue to the present.

13.     Plaintiff Meghan Christenson is a resident of the City of Oakland, County of Alameda, California, and a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and California Civil Code § 1786.2(b).  Plaintiff Christenson applied to become an office manager with Uber in 2012, but was rejected by Defendants based on information contained in a consumer credit report.  In February 2015, Plaintiff Christenson learned for the first time that Defendants had obtained her credit report during the 2012 application process.

14.     Defendant Uber Technologies, Inc. is a California corporation headquartered in San Francisco, California.  Uber is a "person" within the meaning of 15 U.S.C. § 1681a(b) and California Civil Code § 1786.2(a).  Upon information and belief, Uber obtained consumer background reports of Plaintiff Gillette and putative class members in violation of the FCRA, ICRAA, and CCRAA.

1    15.    Defendant Rasier, LLC is a limited liability company organized under the laws of the

2    state of Delaware.  Rasier is a "person" within the meaning of 15 U.S.C. § 1681a(b) and California

3    Civil Code § 1786.2(a).  Rasier is, on information and belief, a wholly owned subsidiary of Uber.

4    Upon information and belief, Rasier obtained consumer background reports of Plaintiff Wise and

5    putative class members in violation of the FCRA, ICRAA, and CCRAA.

6                    **PLAINTIFF GILLETTE'S FACTUAL ALLEGATIONS**

7    16.    Founded in 2009, Uber provides on demand automobile transportation in over 200 cities

8    across 45 different countries.  It allows its customers to request and pay for car services via a mobile

9    phone application.  Uber advertises itself as "your private driver in more than 40 countries.  Request a

10   ride using the app and get picked up within minutes.  On-demand means no reservations."

11   17.    In February 2013, Plaintiff Gillette was hired by Abbey Lane Limousine ("Abbey"),

12   which provides limousine and car services within the San Francisco Bay Area.  Shortly after starting

13   with Abbey, Plaintiff Gillette applied to become a driver for Uber.  Following the submission of an

14   application through Uber's website, Plaintiff Gillette met with an Uber representative at one of Uber's

15   San Francisco office locations.  There he passed a short test given on a tablet device, and had his

16   picture taken.  Plaintiff Gillette began driving for Uber immediately thereafter.  At no time during the

17   application process did Uber request Plaintiff Gillette's authorization to obtain a consumer background

18   report, nor did it notify Plaintiff Gillette that it would obtain a consumer background report.

19   18.    From approximately March 2013 to April 2014, Plaintiff Gillette successfully drove for

20   Uber.  Using an SUV provided by Abbey, Plaintiff Gillette provided "SUV" car services in the San

21   Francisco metropolitan area.  Plaintiff Gillette worked between 36-48 hours per week.  On average he

22   picked up and dropped off between 4 to 7 customers per day.  Although Plaintiff Gillette continued to

23   work for Abbey, he spent approximately 90% of his time working for Uber.  Throughout his

24   employment with Uber, Plaintiff Gillette maintained a rating of between 4.7 and 4.8 out of 5 stars.

25   19.    Uber paid Abbey once per week for Plaintiff Gillette's services.  The gross money

26   generated by Plaintiff Gillette was split as follows: 20% to Uber, 40% to Abbey, and 40% to Plaintiff.

27   20.    Uber classified Plaintiff Gillette as an independent contractor rather than as an

28   employee.  As a result, Uber failed to provide Plaintiff Gillette with itemized wage statements,

583451.6

1    minimum and overtime wages, lawful meal or rest periods, and reimbursement for necessary expenses.

2    Uber also failed to keep accurate payroll records showing Plaintiff Gillette's hours worked and wages

3    paid.  Moreover, Uber retained all gratuities despite representing to its customers and to Plaintiff

4    Gillette that gratuity is included in the total cost of the car service.  Gratuities of 15-20% are customary

5    in the car service industry.

6        21.    In April 2014, Plaintiff Gillette's Uber account was abruptly deactivated.  Both Plaintiff

7    Gillette and Abbey immediately contacted Uber to determine the reason for the deactivation.  In

8    response, Uber requested that Plaintiff Gillette meet with a representative at Uber's Mission Street

9    office location.  The meeting between Plaintiff Gillette and Uber lasted only a few minutes.  Upon

10   Plaintiff's arrival, a male representative who failed to identify himself greeted Plaintiff Gillette in the

11   building lobby.  The representative informed Plaintiff Gillette that "something had come up" on his

12   consumer background report and that he could no longer work for Uber.  Prior to his termination, Uber

13   failed to provide Plaintiff Gillette with a copy of his consumer background report or a summary of his

14   rights under the FCRA or other applicable laws.

15       22.    Subsequently, Plaintiff Gillette, through Abbey, requested further information regarding

16   Plaintiff Gillette's consumer background report.  Following several requests for information, Uber

17   informed Plaintiff Gillette that his consumer background report was produced by a company called

18   Hirease, Inc., an employment background screening company located in North Carolina.  Pursuant to

19   Plaintiff Gillette's request, Hirease provided Plaintiff Gillette with a copy of his consumer background

20   report on May 2, 2014.

21                           **PLAINTIFF WISE'S FACTUAL ALLEGATIONS**

22       23.    Plaintiff Wise applied to become a driver for Uber in September 2013 through Uber's

23   website.  Several weeks thereafter, she logged into her account and learned that Defendants had

24   rejected her driver application.  Upon information and belief, Defendants denied Plaintiff Wise's

25   application due to information they obtained through a consumer background report.

26       24.    At no time during the application process did Defendants obtain Plaintiff Wise's written

27   authorization to procure a consumer background report, nor did Defendants notify Plaintiff Wise in a

28   clear and conspicuous, written disclosure that they would obtain her consumer background report.

583451.6

1    Moreover, Defendants failed to provide Plaintiff Wise with a copy of her consumer background report

2    and a description of her rights under the FCRA prior to taking an adverse action against her.

3                              **PLAINTIFF FARMER'S FACTUAL ALLEGATIONS**

4          25.     Plaintiff Farmer applied to become a driver for Uber in April 2014 through Uber's

5    website.  During the application process, Plaintiff Farmer met with an Uber representative in Uber's

6    San Francisco office.  While he was there, the representative told Plaintiff Farmer that "something had

7    come up" on his background report, and that as a consequence he would not be hired to work for Uber.

8    The representative also stated that he could not tell Plaintiff Farmer what specifically had "come up"

9    on his background report.  Upon information and belief, Defendants denied Plaintiff Farmer's

10   application due to information they obtained from a consumer background report.

11          26.     At no time during the application process did Defendants notify Plaintiff Farmer in a

12   clear and conspicuous, written disclosure that they would obtain his consumer background report.

13   Moreover, Defendants failed to provide Plaintiff Farmer with a copy of his consumer background

14   report and a description of his rights under the FCRA prior to taking an adverse action against him.

15               **PLAINTIFF CHRISTENSON'S FACTUAL ALLEGATIONS**

16          27.     Plaintiff Christenson applied to work for Uber as an entry level, administrative Office

17   Manager in late 2012 and/or 2013.  She went through three stages of interviews and appeared to have

18   the position.  However, Uber declined Plaintiff Christenson's application.

19          28.     In February 2015, Plaintiff Christenson retrieved her credit report and learned for the

20   first time that, upon information and belief, Defendant Uber had retrieved her credit report during the

21   application process in late 2012 or early 2013.  Plaintiff Christenson is informed and believes that

22   Uber's decision not to hire her was based on negative information contained in her credit report, which

23   she would have been able to explain if given the opportunity to do so.

24          29.     At no time during the application process did Defendants obtain Plaintiff Christenson's

25   written authorization to procure a consumer background report, nor did Defendants notify Plaintiff

26   Christenson in a clear and conspicuous, written disclosure that they would obtain her consumer

27   background report.  Moreover, Defendants failed to provide Plaintiff Christenson with a copy of her

28

1    consumer background report and a description of her rights under the FCRA prior to taking an adverse

2    action against her.

3         30.    The position for which Plaintiff Christenson applied did not fall within any of the

4    exceptions set forth in Labor Code § 1024.5, and thus Uber's obtaining of her credit report was

5    unlawful under that section.  Ms. Christenson was not applying for a position covered by the executive

6    exemption of the Labor Code; she was not applying for a position that involved regular access to all of

7    the following:  bank or credit card information, social security number, and date of birth; and she was

8    not applying for a position covered by any of the other exceptions in Section 1024.5.  Therefore,

9    Defendants' procurement of her consumer credit report was a violation of the Labor Code, giving rise

10   to a cause of action under PAGA.

11        **FACTUAL ALLEGATIONS COMMON TO ALL FCRA CLASS MEMBERS**

12        31.    15 U.S.C. § 1681b(b)(2)(A) governs the conduct of any person who obtains consumer

13   background reports used for employment purposes:

14        Except as provided in subparagraph (B), a person may not procure a
          consumer report, or cause a consumer report to be procured, for
15        employment purposes with respect to any consumer, unless—

16        (i) a clear and conspicuous disclosure has been made in writing to the
          consumer at any time before the report is procured or caused to be
17        procured, in a document that consists solely of the disclosure, that a
          consumer report may be obtained for employment purposes; and
18
          (ii) the consumer has authorized in writing (which authorization may be
19        made on the document referred to in clause (i)) the procurement of the
          report by that person.
20

21        32.    Defendants failed to provide Plaintiffs and the putative class "clear and conspicuous"

22   notice in a written document that consists solely of the disclosure that it may procure consumer

23   background reports for employment purposes.

24        33.    Similarly, Defendants failed to obtain written authorization from Plaintiffs and the

25   putative class prior to obtaining consumer background reports for employment purposes.

26        34.    15 U.S.C. § 1681b(3)(A) governs the conduct of any person who uses a consumer

27   background report to take adverse action against consumers with respect to their employment:

28        Except as provided in subparagraph (B), in using a consumer report for
          employment purposes, before taking any adverse action based in whole

7

583451.6

or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

35.     The purpose of 15 U.S.C. § 1681b(3)(A) is to inform consumers of their rights under the FCRA and provide them an opportunity to review the consumer report and correct any inaccuracies before any adverse actions are taken.

36.     Defendants failed to provide Plaintiffs and the putative class with a summary of their rights under the FCRA prior to taking adverse actions against them, including termination of their employment and suspension and/or deactivation of their user accounts, and denial of their applications for employment.

37.     Defendants further failed to provide Plaintiffs and the putative class a copy of their consumer background reports prior to taking adverse actions against them, including termination of their employment and suspension and/or deactivation of their user accounts, and denial of their applications for employment.

38.     Defendants acted willfully in violating the requirements of the FCRA.  Defendants knew or should have known about their obligations under the FCRA.  These obligations are well-established by the plain language of the FCRA and in the promulgations and opinion letters of the Federal Trade Commission.

39.     Despite Defendants' awareness of their legal obligations, Defendants acted consciously in breaching their known duties and depriving Plaintiffs and other class members of their rights under the FCRA.  At minimum, Defendants' conduct was reckless in failing to make an appropriate inquiry to ascertain their obligations under the FCRA.

40.     As a result of these FCRA violations, Defendants are liable to Plaintiffs and the putative class for statutory damages of $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and reasonable attorneys' fees and costs pursuant to 15

583451.6

1    U.S.C. § 1681n(a)(3).  Plaintiffs and the putative class are also entitled to equitable relief against

2    Defendants enjoining further violations of the FCRA.

3        41.    Throughout the time period at issue, Defendants performed background checks on

4    drivers and other employees and/or workers.

5        42.    After increasing pressure from regulators, on April 25, 2014, Uber announced a new

6    "three-step" background check policy that includes "county, federal, and multi-state checks."  Uber

7    further announced that "[w]e apply this comprehensive and new industry standard consistently across

8    all Uber products, including uberX."

9        43.    On October 29, 2014, Uber announced that it is "on track to complete more than 2

10   million background checks of potential drivers in 2014, which Uber has noted is among the highest

11   totals of any major corporation in the world."

12   **FACTUAL ALLEGATIONS COMMON TO ALL CCRAA CLASS MEMBERS**

13       44.    California Civil Code § 1785.1 *et seq.* governs the conduct of persons who use a

14   consumer credit report to take adverse action against "consumers."  Pertaining to the use of such

15   reports for employment purposes, California Civil Code § 1785.20.5 states:

16       (a) Prior to requesting a consumer credit report for employment
         purposes, the user of the report shall provide written notice to the person
17       involved.  The notice shall inform the person that a report will be
         used, and shall identify the specific basis under subdivision (a) of
18       Section 1024.5 of the Labor Code for use of the report. The notice shall
         also inform the person of the source of the report, and shall contain a box
19       that the person may check off to receive a copy of the credit report. If the
         consumer indicates that he or she wishes to receive a copy of the report,
20       the user shall request that a copy be provided to the person when the user
         requests its copy from the credit reporting agency. The report to the user
21       and to the subject person shall be provided contemporaneously and at no
         charge to the subject person.

22
23       (b) Whenever employment involving a consumer is denied either wholly
         or partly because of information contained in a consumer credit report
24       from a consumer credit reporting agency, the user of the consumer credit
         report shall so advise the consumer against whom the adverse action has
25       been taken and supply the name and address or addresses of the
         consumer credit reporting agency making the report.  No person shall be
26       held liable for any violation of this section if he or she shows by a
         preponderance of the evidence that, at the time of the alleged violation,
27       he or she maintained reasonable procedures to assure compliance with
         this section.

28

9

583451.6

45.     Defendants failed to provide written notice to Plaintiff Christenson and the putative class prior to requesting their consumer credit reports, as required by Cal. Civ. Code § 1785.20.5. Defendants did not inform Plaintiff Christenson and the putative class of the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the reports or the source of the reports, and did not include a box that they could check off to receive copies of such reports.

46.     Defendants denied employment to Plaintiff Christenson and the putative class on the basis of information contained in the report without so advising them, and without supplying the name of the consumer credit reporting agency making the report.

47.     Upon information and belief, Defendants had no reasonable procedures in place to assure compliance with Section 1785.20.5.

48.     Defendants' failure was willful because Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff Christenson and the putative class.

## CLASS ALLEGATIONS

49.     Plaintiffs bring this action in their individual capacities and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following "FCRA Disclosure Class" and "FCRA Consent Class:"

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked for, or applied to work for, Uber and/or Rasier on or after November 26, 2009, and received inadequate disclosure prior to consumer report procurement as required by 15 U.S.C. § 1681b(b)(2)(A)(i).

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked for, or applied to work for,  Uber and/or Rasier on or after November 26, 2009, and did not provide written consent prior to consumer report procurement as required by 15 U.S.C. § 1681b(b)(2)(A)(ii).

50.     Plaintiffs also bring this action in their individual capacities and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following "FCRA Consumer Report Copy Class" and "FCRA Summary of Rights Class:"

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked for, or applied to work for, Uber and/or Rasier on or after November 26, 2009, and were subject to an adverse action based in whole or in part on information contained in a consumer report without receiving a copy of the consumer report at least five business days prior to the adverse action

10

1    as required by 15 U.S.C. § 1681b(b)(3)(A)(ii).

2    All individuals residing in the United States (including all territories and
     other political subdivisions of the United States) who worked for, or
3    applied to work for, Uber and/or Rasier on or after November 26, 2009,
     and were subject to an adverse action based in whole or in part on
4    information contained in a consumer report without receiving a written
     description of their rights under the FCRA at least five business days
5    prior to the adverse action as required by 15 U.S.C. § 1681b(b)(3)(A)(i).

6        51.    Plaintiff Christenson also brings this action in her individual capacity and as a class

7    action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following "CCRAA Disclosure

8    Class" and "CCRAA Notice of Adverse Determination Class":

9    All individuals residing in California who worked for, or applied to work
     for, Uber and/or Rasier on or after November 26, 2007, and received
10   inadequate notice prior to consumer credit report procurement as
     required by Cal. Civ. Code § 1785.20.5(a).
11
     All individuals residing in California who worked for, or applied to work
12   for, Uber and/or Rasier on or after November 26, 2007, were denied
     employment or terminated either wholly or partly because of information
13   contained in a consumer credit report, and were not so advised and
     supplied with the name and address of the consumer credit reporting
14   agency by Defendants, as required by Cal. Civ. Code § 1785.20.5(b).

15       52.    **Numerosity** – Plaintiffs are informed and believe and thereon allege that each putative

16   class contains at least forty persons.  Information concerning the exact size of each putative class is

17   within the possession of Defendants.  The putative classes are so numerous that joinder of all members

18   is impractical.

19       53.    **Commonality** – Common questions of fact and law exist as to all class members and

20   predominate over any questions that affect only individual class members, including by example only

21   and without limitation, the following:

22           a.    Whether Defendants had a policy and/or practice of procuring or causing to be

23                 procured consumer reports for their workers and applicants;

24           b.    Whether Defendants had a policy and/or practice of providing clear and

25                 conspicuous notice in a written document that consists solely of the disclosure

26                 that it may procure consumer reports for their workers and applicants;

27

28

                                                  11

583451.6

c.    Whether Defendants had a policy and/or practice of obtaining written authorization from their workers and applicants prior to procuring consumer reports;

d.    Whether Defendants had a policy and/or practice of providing copies of consumer reports to their existing workers and applicants at least five business days prior to taking any adverse action based in whole or in part on the consumer reports;

e.    Whether Defendants had a policy and/or practice of providing a written description of FCRA rights to their workers and applicants at least five business days prior to taking any adverse action based in whole or in part on a consumer report;

f.    Whether any written description of FCRA rights provided to Defendants' workers and applicants is legally sufficient;

g.    Whether Defendants violated the CCRAA;

h.    Whether Defendants maintained reasonable procedures to assure compliance with the CCRAA;

i.    Whether Defendants willfully failed to comply with the FCRA;

j.    Whether Defendants willfully failed to comply with the CCRAA;

k.    The proper measure of statutory and punitive damages and the availability and appropriateness of declaratory and injunctive relief;

54.    **Typicality** – Plaintiffs' claims are typical of the claims of the putative class they seek to represent in that: (1) Plaintiffs are members of those classes; (2) Plaintiffs' claims arise from the same practice or course of conduct that forms the basis of the class claims; (3) Plaintiffs' claims are based upon the same legal and remedial theories as those of the classes and involve similar factual circumstances; (4) there is no antagonism between the interests of Plaintiffs and absent class members; (5) the injuries that Plaintiffs suffered are similar to the injuries that class members have suffered.

55.    **Adequacy** – Plaintiffs will fairly and adequately represent the classes in that: (1) there is no conflict between Plaintiffs' claims and those of other class and subclass members; (2) Plaintiffs

583451.6

1  have retained counsel who are skilled and experienced in class actions and who will vigorously

2  prosecute this litigation; (3) Plaintiffs' claims are typical of the claims of class members.

## PAGA REPRESENTATIVE ACTION ALLEGATIONS

4      56.    **Plaintiff Gillette's Representative Action Allegations.**  On September 4, 2014,

5  Plaintiff Gillette gave written notice by certified mail of Uber's violations of various provisions of the

6  California Labor Code as alleged in this complaint to the Labor and Workforce Development Agency

7  ("LWDA") and Uber.  *See* Letter from Andrew P. Lee to Secretary Marty Morgenstern (Sept. 4, 2014)

8  attached hereto as Exhibit A.

9      57.    The LWDA did not provide notice of its intention to investigate Uber's alleged

10  violations within thirty-three (33) calendar days of the September 4, 2014 postmark date of the notice

11  sent by Plaintiff Gillette.  *See* Cal. Lab. Code § 2699.3(a)(2)(A).

12     58.    Plaintiff Gillette is informed and believes and thereon alleges that Uber uniformly

13  misclassifies all of its drivers as independent contractors when they are, in fact, employees.

14     59.    Uber exerts significant control over its drivers.  For example, Uber drivers must adhere

15  to rules regarding the cleanliness of their car, their clothing, and the timeframe within which they pick

16  up a customer following a request, and must provide transportation for at least one customer per

17  month.

18     60.    As a result of the misclassification, Uber failed to provide Plaintiff Gillette and other

19  aggrieved employees with itemized wage statements, minimum and overtime wages, lawful meal or

20  rest periods, and reimbursement for necessary expenses.  Uber also failed to keep accurate payroll

21  records showing aggrieved employees' hours worked and wages paid.  Moreover, Uber retained all

22  gratuities owed to aggrieved employees despite representing to its customers that gratuity is included

23  in the total cost of the car service.  Gratuities of 15-20% are customary in the car service industry.

24     61.    Plaintiff Gillette further alleges that Uber violated PAGA in the following ways:  (1)

25  Uber has failed to provide prompt payment of wages to driver employees upon termination and

26  resignation in violation of Labor Code §§ 201, 202, 203; (2) Uber has failed to provide itemized wage

27  statements to driver employees in violation of Labor Code §§ 226(a), 1174, and 1174.5; (3) Uber has

28  failed to provide meal and rest periods in violation of Wage Order No. 9 and Labor Code §§ 226.7,

13

583451.6

512, and 558; (4) Uber has willfully misclassified its driver employees in violation of Labor Code § 226.8; (5) Uber has retained portions of gratuities intended for driver employees in violation of Labor Code § 351; (6) Uber has failed to keep required payroll records in violation of Wage Order No. 9 and Labor Code §§ 1174 and 1174.5; (7) Uber has failed to pay overtime wages in violation of Wage Order No. 9 and Labor Code §§ 510, 558, 1194 and 1198; (8) Uber has failed to pay minimum wages in violation of Wage Order No. 9 and Labor Code §§ 1182.12, 1194, and 1197; (9) Uber has failed to reimburse driver employees for all reasonably necessary expenditures and losses incurred by driver employees in direct consequence of the discharge of their duties, including but not limited to fuel, insurance, maintenance, and toll costs, in violation of Labor Code § 2802.

62. **Plaintiff Christenson's Representative Action Allegations.** On July 22, 2015, Plaintiff Christenson gave written notice by certified mail of Defendants' violation of California Labor Code Section 1024.5, as alleged in this complaint, to the LWDA and Defendants. *See* Letter from Theodore Maya to Secretary David M. Lanier (July 22, 2015) attached hereto as Exhibit B.

63. The LWDA did not provide notice of its intention to investigate Uber's alleged violations within thirty-three (33) calendar days of the July 22, 2015 postmark date of the notice sent by Plaintiff Christenson. *See* Cal. Lab. Code § 2699.3(a)(2)(A).

64. Plaintiff Christenson is informed and believes and thereon alleges that Defendants obtain consumer credit reports for applicants and/or employees, contrary to California Labor Code Section 1024.5, even though no exception listed in that section applies.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (15 U.S.C. § 1681b(b)(2)(A)(i))

65. Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

66. Defendants willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) because they failed to provide Plaintiffs and the putative class "clear and conspicuous" notice in a written document that consists solely of the disclosure that they may procure consumer background reports for employment purposes.

583451.6

67.     Plaintiffs seek statutory damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

68.     Plaintiffs seek punitive damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

69.     In the alternative to the Plaintiffs' allegations that these violations were willful, Plaintiffs allege that the violations were negligent and seek issue-certification of that issue and appropriate remedies, if any, under 15 U.S.C. § 1681o.

70.     Plaintiffs seek the costs of this action together with reasonable attorney's fees as determined by the Court.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (15 U.S.C. § 1681b(b)(2)(A)(ii))

71.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

72.     Defendants willfully violated 15 U.S.C. § 1681b(b)(2)(A)(ii) because they failed to obtain written authorization from Plaintiffs and the putative class prior to obtaining consumer background reports for employment purposes.

73.     Plaintiffs seek statutory damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

74.     Plaintiffs seek punitive damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

75.     In the alternative to the Plaintiffs' allegations that these violations were willful, Plaintiffs allege that the violations were negligent and seek appropriate remedies, if any, under 15 U.S.C. § 1681o.

76.     Plaintiffs seek the costs of this action together with reasonable attorney's fees as determined by the Court.

583451.6

1

2

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(15 U.S.C. § 1681b(b)(3)(A)(ii))**

3

77.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

4

paragraphs above as if fully set forth herein.

5

78.     Defendants willfully violated 15 U.S.C. § 1681b(3)(A)(ii) because they failed to

6

provide Plaintiffs and the putative class with a summary of their rights under the FCRA prior to taking

7

adverse actions against them, including termination of their employment and suspension and/or

8

deactivation of their user accounts.

9

79.     Plaintiffs seek statutory damages for themselves and all others similarly situated for

10

these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

11

80.     Plaintiffs seek punitive damages for themselves and all others similarly situated for

12

these violations pursuant to 15 U.S.C. § 1681n(a)(2).

13

81.     In the alternative to the Plaintiffs' allegations that these violations were willful,

14

Plaintiffs allege that the violations were negligent and seek appropriate remedies, if any, under 15

15

U.S.C. § 1681o.

16

82.     Plaintiffs seek the costs of this action together with reasonable attorney's fees as

17

determined by the Court.

18

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(15 U.S.C. § 1681b(b)(3)(A)(i))**

19

20

83.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

21

paragraphs above as if fully set forth herein.

22

84.     Defendants willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) because they failed to

23

provide Plaintiffs and the putative class a copy of their consumer background reports prior to taking

24

adverse actions against them, including termination of their employment and suspension and/or

25

deactivation of their user accounts.

26

85.     Plaintiffs seek statutory damages for themselves and all others similarly situated for

27

these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

28

16

583451.6

86.     Plaintiffs seek punitive damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

87.     In the alternative to Plaintiffs' allegations that these violations were willful, Plaintiffs allege that the violations were negligent and seek appropriate remedies, if any, under 15 U.S.C. § 1681o.

88.     Plaintiffs seek the costs of this action together with reasonable attorney's fees as determined by the Court.

## FIFTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA CREDIT REPORTING AGENCIES ACT
### (Cal. Civ. Code § 1785.1 *et seq.*)

89.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

90.     Defendants used a "consumer credit report" as defined in Cal. Civ. Code § 1785.3 to take adverse employment action against Plaintiff Christensen and other members of the CCRAA Class.

91.     Defendants violated the CCRAA by failing to provide written notice to Plaintiff Christensen and the putative class prior to requesting such consumer credit reports that complied with Cal. Civ. Code § 1785.20.5 by informing them of the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the reports, informing them of the source of the reports, and including a box that they could check off to receive copies of such reports.

92.     Defendants violated the CCRAA by denying employment to Plaintiff and members of the CCRAA Class in whole or in part because of information contained in a consumer credit report without so advising them, and without supplying the name and address of the consumer credit reporting agency making the report, in violation of Cal. Civ. Code § 1785.20.5(b).

93.     Defendants willfully violated the CCRAA by acting in deliberate or reckless disregard of their obligations and the rights of Plaintiff Christensen and the putative class.

94.     Plaintiff Christensen seeks statutory damages for herself and all others similarly situated for these violations pursuant to California Civil Code § 1785.31(a)(2)(A).

95.     Plaintiff Christensen and other members of the CCRAA Class are entitled to:

17

583451.6

a.   Any actual damages sustained by Plaintiffs and other Class members as a result of the failure.

b.   Punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the Court deems proper;

c.   Injunctive relief requiring Defendants to comply with the FCRA and CCRAA; and

d.   Costs and reasonable attorney's fees.

## SIXTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT
### (Cal. Civ. Code § 1786.16(2)(B))

96.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

97.   Plaintiffs allege this cause of action on an individual basis only.

98.   Defendants willfully violated California Civil Code § 1786.16(2)(B) because they failed to provide Plaintiffs "clear and conspicuous" notice of the following in a written document that consists solely of the disclosure:  (1) that they may procure a consumer background report for employment purposes; (2) the permissible purpose of the report; (3) that the disclosure may include information on the consumer's character, general reputation, personal characteristics, and mode of living; (4) identification of the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation; (5) notification of the nature and scope of the investigation requested, including a summary of the provisions of California Civil Code § 1786.22.

99.   Plaintiffs seek statutory damages for themselves for these violations pursuant to California Civil Code § 1786.16(2)(B).

100.   Plaintiffs seek punitive damages for these violations pursuant to California Civil Code § 1786.50(b).

## SEVENTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT
### (Cal. Civ. Code § 1786.16(a)(2)(C))

583451.6

1    101.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

2    paragraphs above as if fully set forth herein.

3    102.    Plaintiffs allege this cause of action on an individual basis only.

4    103.    Defendants willfully violated California Civil Code § 1786.16(a)(2)(C) because they

5    failed to obtain written authorization from Plaintiffs prior to obtaining a consumer background report

6    for employment purposes.

7    104.    Plaintiffs seek statutory damages for these violations pursuant to California Civil Code

8    § 1786.16(a)(2)(B).

9    105.    Plaintiffs seek punitive damages for these violations pursuant to California Civil Code

10   § 1786.50(b).

11
<div align="center">

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA INVESTIGATIVE**
**CONSUMER REPORTING AGENCIES ACT**
**(Cal. Civ. Code § 1786.16(b))**

</div>

14   106.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

15   paragraphs above as if fully set forth herein.

16   107.    Plaintiffs allege this cause of action on an individual basis only.

17   108.    Defendants willfully violated California Civil Code § 1786.16(b)(1) because they failed

18   to provide, by means of a box to check on a written form, the opportunity to request and receive a copy

19   of the consumer background report obtained for Plaintiff.  Defendants also willfully violated California

20   Civil Code § 1786.16(b)(1) because they failed to provide Plaintiffs with a copy of their consumer

21   background report within three days of request.

22   109.    Plaintiffs seek statutory damages for these violations pursuant to California Civil Code

23   § 1786.16(a)(2)(B).

24   110.    Plaintiffs seek punitive damages for these violations pursuant to California Civil Code

25   § 1786.50(b).

26

27

28

SECOND AMENDED COMPLAINT – CASE NO. 3:14-CV-05241-EMC

583451.6

**NINTH CAUSE OF ACTION**
**VIOLATION OF THE PRIVATE ATTORNEYS GENERAL ACT ("PAGA")**
**Based on Labor Code Violations Arising from Misclassification**
**(California Labor Code § 2698 *et seq.*)**

111.    Plaintiff Gillette re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

112.    Plaintiff Gillette is an "aggrieved employee" under PAGA, as he was employed by Uber during the applicable statutory period and suffered one or more of the Labor Code violations set forth herein.  Accordingly, he seeks to recover on behalf of himself and all other current and former aggrieved employees of Uber, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

113.    Plaintiff Gillette seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court* (2009) 46 Cal. 4th 969.  Therefore, class certification of the PAGA claims is not required, but Plaintiff Gillette may choose to seek certification of the PAGA claims.

114.    Plaintiff Gillette and all other current and former aggrieved employees of Uber seek civil penalties pursuant to PAGA for violations of the following Labor Code provisions:

      a.     failure to provide prompt payment of wages to driver employees upon termination and resignation in violation of Labor Code §§ 201, 202, 203;

      b.     failure to provide itemized wage statements to driver employees in violation of Labor Code §§ 226(a), 1174, and 1174.5;

      c.     failure to provide meal and rest periods in violation of Wage Order No. 9 and Labor Code §§ 226.7, 512, and 558;

      d.     willfully misclassifying its driver employees in violation of Labor Code § 226.8;

      e.     failure to provide gratuities intended for driver employees in violation of Labor Code § 351;

      f.     failure to keep required payroll records in violation of Wage Order No. 9 and Labor Code §§ 1174 and 1174.5;

g.   failure to pay overtime wages in violation of Wage Order No. 9 and Labor Code §§ 510, 558, 1194 and 1198;

h.   failure to pay minimum wages in violation of Wage Order No. 9 and Labor Code §§ 1182.12, 1194, and 1197;

i.   failure to reimburse driver employees for all reasonably necessary expenditures and losses incurred by driver employees in direct consequence of the discharge of their duties,  including but not limited to fuel, insurance, maintenance, and toll costs, in violation of Labor Code § 2802.

115.   With respect to violations of Labor Code § 226(a), Labor Code § 226.3 imposes a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation of Labor Code § 226(a).

116.   With respect to violations of Labor Code §§ 510, 512, Labor Code § 558 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  Moreover, Plaintiff Gillette seeks civil penalties in the amount of unpaid wages owed to aggrieved employees pursuant to Labor Code § 558(a)(3).

117.   With respect to violations of Labor Code § 1174, Labor Code § 1174.5 imposes a civil penalty of $500.

118.   Labor Code § 2699 *et seq*. imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for initial violations, and two hundred dollars ($200) pay period, per aggrieved employee for subsequent violations for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code §§ 226.7, 226.8, 1174, 1182.12, 1194, 1197, 1198, and 2802.

583451.6

**TENTH CAUSE OF ACTION**
**VIOLATION OF PAGA**
**Arising from Impermissible Credit Checks in Violation of Labor Code 1024.5**
**(California Labor Code § 2698 *et seq.*)**

119.    Plaintiff Christenson re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

120.    Defendant Uber is an "employer or prospective employer" under Labor Code Section 1024.5(a).  During the applicable statutory period, Plaintiff discovered that Uber had violated Labor Code Section 1024.5 with respect to her application for employment.  Plaintiff could not reasonably have discovered the violation earlier, as Uber did not disclose its violation to her.  Accordingly, she seeks to recover on behalf of herself and all other current and former aggrieved employees or applicants of Uber the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

121.    Plaintiff Christenson seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court* (2009) 46 Cal. 4th 969.  Therefore, class certification of the PAGA claims is not required, but Plaintiff Christenson may choose to seek certification of the PAGA claims.

122.    Plaintiff Christenson and all other current and former aggrieved employees and applicants of Uber seek civil penalties pursuant to PAGA for violations of the following Labor Code provision:  Impermissible use of consumer credit reports for employment purposes, in violation of Labor Code § 1024.5, with respect to individuals not included in the exceptions enumerated in that section.

123.    Labor Code § 2699 imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for initial violations, and two hundred dollars ($200) pay period, per aggrieved employee for subsequent violations for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code § 1024.5

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment against Defendants as follows:

A.    Certification of Plaintiffs' FCRA and CCRAA claims as class actions pursuant to

1    Federal Rule of Civil Procedure 23;

2           B.      Appointment of all of the named Plaintiffs as class representatives with respect to the

3    FCRA claims, appointment of Plaintiff Christenson as class representative with respect to the

4    CCRAA claims, and appointment of Plaintiffs' Counsel Class Counsel;

5           C.      Class notice to all individuals who worked for or applied to work for Defendants

6    during the relevant class periods;

7           D.      Declaratory and injunctive relief, including an order preliminarily and permanently

8    enjoining Defendants from engaging in the practices challenged herein;

9           E.      An award of actual or statutory damages to Plaintiffs and the Class pursuant to 15

10   U.S.C. § 1681n(a)(1)(A) in an amount subject to proof at trial;

11          F.      An award of punitive damages to Plaintiffs and the Class pursuant to 15 U.S.C.

12   § 1681n(a)(2) and California Civil Code §§ 1785.31(a)(2)(B) and 1786.50(b);

13          G.      An award of actual or statutory damages to Plaintiffs pursuant to California Civil Code

14   §§ 1786.50(a)(2) and 1785.31 in an amount subject to proof at trial;

15          H.      An award of civil penalties pursuant to PAGA;

16          I.      An award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3),

17   California Code of Civil Procedure § 1021.5, California Civil Code § 1786.50(a)(2), California

18   Labor Code § 2699(g) and/or other applicable law;

19          J.      Pre-judgment and post-judgment interest as provided by law; and

20          K.      Such other and further relief that the Court may deem just and proper.

21                                   **DEMAND FOR JURY TRIAL**

22          Plaintiffs, on behalf of themselves and the putative class, hereby demand trial by jury.

23   Dated:  August 25, 2015                    Respectfully submitted,

24                                              GOLDSTEIN, BORGEN, DARDARIAN & HO

25

26                                                 */s/ Andrew P. Lee*

27                                              Andrew P. Lee

28                                              Attorneys for Plaintiffs and the putative class

583451.6

# EXHIBIT A



**Goldstein, Borgen,
Dardarian & Ho**

Shareholders
David Borgen
Linda M. Dardarian
Laura L. Ho

Of Counsel
Barry Goldstein
Morris J. Baller

September 4, 2014

<u>**Via Certified Mail – Return Receipt Requested**</u>

Secretary Marty Morgenstern
California Labor & Workforce Development Agency
801 K Street, Suite 2101
Sacramento, CA 95814

   Re:  *Labor Code Private Attorneys General Act Notice*

Dear Secretary Morgenstern:

   My firm represents Ronald Gillette in connection with his claims pursuant to the California Labor Code. Mr. Gillette previously worked for Uber Technologies, Inc. ("Uber") as a driver from approximately February 2013 to April 2014. Since Uber erroneously classifies its drivers as independent contractors, Uber has failed to comply with numerous provisions of the California Labor Code. Mr. Gillette hereby provides notice of his intent to seek civil penalties pursuant to the Private Attorneys General Act of 2004 (California Labor Code § 2699 *et seq.*) for the following Labor Code violations:

   1.  Uber has failed to provide prompt payment of wages to driver employees upon termination and resignation in violation of Labor Code §§ 201, 202, 203;

   2.  Uber has failed to provide semimonthly payments of wages in violation of Labor Code §§ 204 and 210;

   3.  Uber has failed to provide conspicuous notice of regular pay days, including time and place of payment, in violation of Labor Code § 207;

   4.  Uber has failed to provide itemized wage statements to driver employees in violation of Labor Code §§ 226(a), 1174, and 1174.5;

   5.  Uber has failed to provide meal and rest periods in violation of Wage Order No. 9 and Labor Code §§ 226.7, 512, and 558;

   6.  Uber has willfully misclassified its driver employees in violation of Labor Code § 226.8;

   7.  Uber has retained portions of gratuities intended for driver employees in violation of Labor Code § 351;

Secretary Marty Morgenstern                    -2-                    September 4, 2014

8.      Uber has failed to keep required payroll records in violation of Wage Order No. 9
        and Labor Code §§ 1174 and 1174.5;

9.      Uber has failed to pay overtime wages in violation of Wage Order No. 9 and
        Labor Code §§ 510, 558, 1194 and 1198;

10.     Uber has failed to pay minimum wages in violation of Wage Order No. 9 and
        Labor Code §§ 1182.12, 1194, and 1197;

11.     Uber has failed to reimburse driver employees for all reasonably necessary
        expenditures and losses incurred by driver employees in direct consequence of the
        discharge of their duties,  including but not limited to fuel, insurance,
        maintenance, and toll costs, in violation of Labor Code § 2802.

        Accordingly, Mr. Gillette intends to seek all applicable civil penalties related to the
foregoing violations.  Mr. Gillette hereby invites the Labor and Workforce Development Agency
to take any action it deems appropriate.  Thank you for your attention to this matter.

                            Yours very truly,

                            Andrew P. Lee

APL/slw

cc:     Dalene Bramer
        Employment Counsel
        Uber Technologies, Inc.
        1455 Market Street, Fourth Floor
        San Francisco, CA  94103
        (via certified mail)

548237.1

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Sk_  ☐ Agent  ☐ Addressee<br>B. Received by ( *Printed Name* )  C. Date of Delivery<br>_Stewart_  _9-8_ |
| 1. Article Addressed to:<br><br>_Dalene Bramer_<br>_Emplyment Consel_<br>_Uber Technologies, Inc._<br>_1455 Market St, 4th Flr_<br>_San Francisco, CA 94103_ | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? ( *Extra Fee* )  ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7004 2510 0001 2722 3857 |

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ .48 |
| Certified Fee | 3.30 |
| Return Receipt Fee<br>(Endorsement Required) | 2.70 |
| Restricted Delivery Fee<br>(Endorsement Required) | |
| Total Postage & Fees | $ 6.48 |

Sent To _Dalene Bramer, Uber Tech, Inc._
Street, Apt. No.;
or PO Box No. _1455 Market St, 4th Flr_
City, State, ZIP+4 _San Francisco, CA 94103_

7004 2510 0001 2722 3857

PS Form 3800, June 2002      See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Secty Marty Morgenstern
CA Labor + Workforce
Devt Agency
801 K Street, Ste 2101
Sacramento, CA 95814

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)           ☐ Yes

2. Article Number
   (Transfer from service label)          7004 2510 0001 2722 3840

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ .48 |
| Certified Fee | 3 30 |
| Return Receipt Fee (Endorsement Required) | 2.70 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $6.48 |

Postmark Here   SEP 5 2014

Sent To  Secty Morgenstern CA Labor + Workforce
Street, Apt No.;  801 K Street, Ste 2101
or PO Box No.
City, State, ZIP+4  Sacramento, CA 95814

PS Form 3800, June 2002                See Reverse for Instructions

7004 2510 0001 2722 3840

# EXHIBIT B



# AHDOOT & WOLFSON, PC

ATTORNEYS

July 22, 2015

**<u>VIA CERTIFIED U.S. MAIL, RETURN RECEIPT REQUESTED</u>**

Secretary David M. Lanier
California Labor & Workforce Development Agency
801 K Street, Suite 2101
Sacramento, CA 95814

     **Re:  Labor Code Private Attorneys General Act Notice**

Dear Mr. Lanier:

   This firm represents Meghan Christenson with respect to claims under the California Labor Code, to be asserted against Uber Technologies, Inc. ("Uber").  Ms. Christenson hereby provides notice of her intent to seek civil penalties in accordance with the Private Attorneys General Act of 2004 (California Labor Code§ 2699 et seq.) for violation of California Labor Code § 1024.5, which prohibits a "prospective employer" from "us[ing] a consumer credit report for employment purposes," with certain exceptions not applicable to Ms. Christenson.  Ms. Christenson applied to work for Uber as an office manager in 2012, but learned this year that Uber used a consumer report to deny her that position.

   Ms. Christenson  intends to seek all applicable civil penalties related to the foregoing violation, and invites the Labor and Workforce Development Agency to take any action it deems appropriate.  Thank you for your attention to this matter.

      Sincerely,

      Theodore Maya

cc:  Uber Technologies, Inc.
   c/o National Registered Agents, Inc.
   818 W. Seventh St., Ste. 930
   Los Angeles, CA  90017

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Uber Technologies, Inc.
c/o National Registered Agents, Inc.
818 W. Seventh St., Ste. 930
Los Angeles, CA 90017**

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____

☐ Agent
☐ Addressee

B. Received by (Printed Name)  |  C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail®  ☐ Priority Mail Express™
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)

7014 3490 0001 7008 1481

PS Form **3811**, July 2013  |  Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10



AHDOOT & WOLFSON, PC

ATTORNEYS

1016 PALM AVENUE
WEST HOLLYWOOD, CA 90069

# U.S. Postal Service™
## CERTIFIED MAIL RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

# OFFICIAL USE

| Postage | $ | — |
|---|---|---|
| Certified Fee | | 3.45 |
| Return Receipt Fee (Endorsement Required) | | 2.80 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.25 |

7008 1741 0001 0340 4702

RECEIVED
Postmark Here
JUL 2 2 PAID

Sent To
**Uber Technologies, Inc.**
**c/o National Registered Agents, Inc.**
Street & Apt. No.,
or PO Box No.
**818 W. Seventh St., Ste. 930**
City, State, ZIP+4
**Los Angeles, CA 90017**

PS Form 3800, July 2014                    See Reverse for Instructions


 Cut on dotted line.

## Instructions

1. Each Click-N-Ship® label is unique.  Labels are to be used as printed and used only once.  DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package.  A self-adhesive label is recommended.  If tape or glue is used, DO NOT TAPE OVER BARCODE.  Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

### Click-N-Ship® Label Record

**Signature Confirmation™ :**
**9410 8036 9930 0070 0415 85**

| | | |
|---|---|---|
| Trans. #: | 342996834 | Priority Mail® Postage: | **$5.25** |
| Print Date: | 07/22/2015 | Signature Confirmation | **$2.45** |
| Ship Date: | 07/22/2015 | (Electronic Rate) | |
| Expected | | Total | |
| Delivery Date: | 07/23/2015 | | **$7.70** |

**From:**   THEODORE W MAYA
AHDOOT & WOLFSON, P.C.
1016 PALM AVE
W HOLLYWOOD CA 90069-4059

**To:**   CEO UBER TECHNOLOGIES
NATIONAL REGISTERED AGENTS INC.
818 W 7TH ST
STE 930
LOS ANGELES CA 90017-3476

* Commercial Base Pricing Priority Mail rates apply.  There is no fee for USPS Tracking™ service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

*Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking™ page at usps.com*

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

**Secretary David M. Lanier
California Labor &
Workforce Development Agency
801 K Street, Suite 2101
Sacramento, CA 95814**

3. Service Type
☑ Certified Mail®     ☐ Priority Mail Express™
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)

7014 3490 0001 7008 1474

PS Form 3811, July 2013          Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10



# AHDOOT & WOLFSON, PC

## ATTORNEYS

1016 PALM AVENUE
WEST HOLLYWOOD, CA 90069



# U.S. Postal Service™
## CERTIFIED MAIL RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®

## OFFICIAL USE

| | |
|---|---|
| Postage | $ — |
| Certified Fee | 3.45 |
| Return Receipt Fee (Endorsement Required) | 2.80 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.25 |

RECEIVED
Postmark Here
JUL 2 2 PAID

7008 1474

1000 0946 3402

**Secretary David M. Lanier**
**California Labor &**
**Workforce Development Agency**
**801 K Street, Suite 2101**
**Sacramento, CA 95814**

*or PO Box No.*

PS Form 3800, Jan. 2014    See Reverse for Instructions





*Cut on dotted line.*

## Instructions

1. Each Click-N-Ship® label is unique.  Labels are to be used as printed and used only once.  DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package.  A self-adhesive label is recommended.  If tape or glue is used, DO NOT TAPE OVER BARCODE.  Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

## Click-N-Ship® Label Record

**Signature Confirmation™ :**
**9410 8036 9930 0070 0415 78**

| | | |
|---|---|---|
| Trans. #: 342996834 | Priority Mail® Postage: | **$5.25** |
| Print Date: 07/22/2015 | Signature Confirmation | **$2.45** |
| Ship Date: 07/22/2015 | (Electronic Rate) | |
| Expected | | |
| Delivery Date: 07/24/2015 | Total | **$7.70** |

**From:**  THEDORE W MAYA
AHDOOT & WOLFSON
1016 PALM AVE
W HOLLYWOOD CA 90069-4059

**To:**  SECRETARY DAVID M LANIER
CA LABOR WORKFORCE DEVT AGENCY
801 K ST
STE 2101
SACRAMENTO CA 95814-3521

* Commercial Base Pricing Priority Mail rates apply.  There is no fee for USPS Tracking™ service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®**  *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking™ page at usps.com*